# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEITH KENION, | : |
| Petitioner, | : Civ. No. 18-10153 (RBK) |
| v. | : |
| STEVEN JOHNSON, et al., | : **OPINION** |
| Respondents. | : |

### ROBERT B. KUGLER, U.S.D.J.

## I. INTRODUCTION

Petitioner, Keith Kenion, is a state prisoner proceeding *pro se* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 2006 by a jury of kidnapping, robbery, and related offenses. He is currently serving an aggregate term of life in prison with an eighty-five percent period of parole ineligibility pursuant to New Jersey's No Early Release Act ("NERA"). N.J. Stat. Ann. § 2C:43-7.2. For the reasons set forth below, the petition will be denied and a certificate of appealability shall not issue.

## II. FACTS

In its opinion on appeal from Petitioner's post-conviction relief ("PCR") proceedings, the New Jersey Appellate Division provided the following summary of the factual background of Petitioner's case:

> [. . .] On September 8, 2003, defendant and co-defendant Wayne Parker entered the home of Anthony and Carolyn Young, then ages 81 and 80, respectively. Defendant struck Mr. Young in the head with ceramic household objects and compelled Mr. Young to show him the location of a coin collection he maintained. Defendant then bound and gagged Mr. Young.

Parker assaulted Mrs. Young and forced her to open a safe and locked drawers containing coins and other valuables, which were removed, and then bound her with ripped clothing. A third accomplice, John Palmer, appeared and helped remove the valuables from the residence. Defendant, Parker, and Palmer fled when someone came to the residence and rang the doorbell. Mrs. Young untied herself and untied and removed the gag from Mr. Young, who was unresponsive.

Mrs. Young spent a week in the hospital recovering from her injuries. In our previous opinion, we described Mr. Young's condition as follows:

> Mr. Young was diagnosed with blunt force trauma to the head, multiple facial fractures and severe swelling. Doctors deemed him unfit for surgery due to his pre-existing medical condition. As a result, his injuries are unlikely to heal or to heal well. His ... injuries created a substantial risk of death and of serious impairment of his ability to eat solid foods.
>
> [*State v. Kenion*, No. A-5665-05T4, 2009 WL 2015772, at *2 (N.J. Super. Ct. App. Div. July 13, 2009).]

Mrs. Young gave a description of the assailants and specifically naming Parker. Police interviewed Parker's girlfriend and obtained search warrants for her vehicle and home, where they recovered objects taken from the Young residence. Police also obtained and executed a search warrant for the residence occupied by Parker. While doing so, police observed Palmer and two individuals drive by the residence twice. Police stopped the vehicle. Detective Francine Webb and another officer recovered coins belonging to the Youngs from Palmer, who was operating the vehicle. After police secured Palmer in their vehicle, they returned to the vehicle Palmer had been operating, and removed defendant. They discovered more currency and coins belonging to the Youngs on the back seat and floor of the vehicle next to defendant.

Detective Webb asked defendant "[A]re you Keith[?]" and defendant responded "[Y]es. I'm from North Carolina. I'm Keith Kenion." After defendant was removed from the vehicle, a pat down by another officer yielded more coins belonging to the Youngs. Defendant was thereafter tried, convicted, and sentenced.

*State v. Kenion*, No. A-1883-14T4, 2017 WL 5664395, at *1–2 (N.J. Super. Ct. App. Div. Nov. 27, 2017).

## III. PROCEDURAL HISTORY

On July 13, 2009, the New Jersey Appellate Division affirmed Petitioner's conviction but remanded his case back to the trial court for resentencing. *See Kenion*, 2009 WL 2015772, at *15. The New Jersey Supreme Court denied Petitioner's request for a writ of certiorari. *See State v. Kenion*, 985 A.2d 547 (N.J. 2009). On remand, the trial court re-sentenced Petitioner to life in prison, subject to NERA. (ECF No. 4-19.) Petitioner again appealed, challenging his sentence as excessive. (ECF No. 4-29.) The Appellate Division affirmed Petitioner's sentence. (ECF No. 4-30.)

In March 2013, Petitioner filed a petition for Post-Conviction Relief ("PCR"). (ECF No. 4-31.) On September 22, 2014, the PCR court denied Petitioner's application. (ECF No. 4-37.) The Appellate Division affirmed the PCR court's denial. *See Kenion*, 2017 WL 5664395, at *6. The New Jersey Supreme Court denied certification. *See State v. Kenion*, 195 A.3d 1289 (N.J. 2018).

In June 2018, Petitioner submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) He raises the following grounds for relief:

> Ground One: Ineffective assistance when trial counsel illegally filed appellate [sic] pretrial suppression motion pro se while appellate [sic] was represented by counsel.
>
> Ground Two: Ineffective assistance when counsel failed to litigate a meritorious Fourth Amendment Claim of invalid issue complaint warrant.

> Ground Three: Ineffective assistance when trial counsel illegally filed appellant's pretrial suppression motion pro se while appellant was represented by counsel.[1]

(ECF No. 1, at 6-9.)

On January 2019, Respondents filed an answer opposing the petition. (ECF No. 4.) Petitioner filed a brief in reply. (ECF No. 5.)

## IV. HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, AEDPA applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable

---

[1] It appears that Petitioner is attempting to raise the same claim in Ground Three as he does in Ground One. Therefore, this Court will address both Ground One and Ground Three together.

4

application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[Federal courts] may not characterize [] state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.' [. . .] If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Brumfeld v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alterations in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Dennis Sec'y Dep't of Corr.*, 834 F.3d 263, 353 n.10 (3d Cir. 2016) (Jordan, J., concurring in part and concurring in the judgment) (noting that while *Ylst* predates the passage of AEDPA, the *Ylst* presumption that any subsequent unexplained orders upholding the judgment will be presumed to

rest upon the same ground is still valid). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## V. DISCUSSION

In his habeas application, Petitioner raises multiple claims of ineffective assistance of counsel. (ECF No. 1, at 6-9.) The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance of counsel, a party must establish that: 1) counsel's performance was deficient; and 2) the petitioner was prejudiced by counsel's deficiency. *See id.* at 687. The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688-89. Thus, the standard is highly deferential, and counsel is "strongly presumed to have rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The petitioner bears the burden of demonstrating how he was prejudiced. Thus, where a petition contains "no factual matter [. . .] and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015) (internal quotations and citations omitted).

Importantly, even if a petitioner can establish both prongs of *Strickland*, a habeas corpus petition still fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti,* 537 U.S. 19, 24-25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

### A. Failure to File Suppression Motion

In his first ground for relief, Petitioner argues his trial counsel was ineffective for not filing a motion to suppress the evidence obtained from his arrest. (ECF No. 1, at 6.) Petitioner alleges that police lacked probable cause to arrest him and trial counsel's refusal to litigate a suppression motion forced Petitioner to bring the motion *pro se*, thereby denying him the right to effective assistance of counsel. (*Id*.)

Prior to trial, Petitioner indicated to his attorney that he believed police lacked probable cause to arrest him and he wanted defense counsel to file a motion to suppress. (ECF No. 5-1, at 3.) Defense counsel informed Petitioner that such a motion was "inappropriate and/or premature," but informed Petitioner that he could file the motion *pro se*. (*Id*. at 7.) Petitioner did file the

7

motion and a testimonial hearing was conducted. (ECF No. 4-2.) The trial court denied Petitioner's motion, finding there had been sufficient probable cause to effectuate the warrantless arrest of Petitioner. (*Id*. at 45-48.) On direct appeal, the Appellate Division affirmed the trial court's finding. *See Kenion*, 2009 WL 2015772, at *14.

Petitioner first raised this claim of ineffective assistance of trial counsel during his PCR proceedings. *See Kenion*, 2017 WL 5664395, at *6. Both the PCR court and the Appellate Division denied Petitioner's claim, finding that since Petitioner had indeed filed the motion himself, and since the motion had been heard and denied, that Petitioner was unable to demonstrate he suffered any prejudice from trial counsel's failure to raise the motion. *See id*.

Where a petitioner alleges ineffective assistance of counsel for failure to litigate a Fourth Amendment claim, a petitioner must prove that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A law enforcement officer's arrest of a defendant without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *U.S. v. Meyers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Although probable cause is "incapable of precise definition," all interpretations of probable cause require a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal citations and quotation marks omitted).

In the instant case, there was sufficient probable cause to arrest Petitioner. At the suppression hearing before the trial court, the arresting officer Detective Webb testified. (ECF No. 4-2.) Detective Webb testified that the victims reported three black males had robbed them and law enforcement received information from Wayne Parker's girlfriend that Parker, John Palmer, and Petitioner, who she stated was named "Keith" or "K", were the perpetrators of the crime. (*Id*. at 24.) Parker's girlfriend told police that on the night of the robbery, she overheard the three men discussing the crime in her living room and she later discovered they had brought the stolen property to her residence. (*Id*. at 25.) This stolen property included coins and two-dollar bills. (*Id*.) Police thereafter obtained a search warrant for Parker's residence where they recovered stolen property from the robbery. (*Id*. at 28.) Parker's father was present at the residence during the search and provided police with a partial physical description of Petitioner. (*Id*. at 26.) He also informed law enforcement that Petitioner lived in North Carolina. (*Id*. at 26.) As the police exited Parker's residence, they noticed a vehicle drive by that matched the description of the one driven by Palmer. (*Id*. at 27.) Detective Webb testified that she recognized Palmer as the driver of the vehicle. (*Id*.) Police effectuated a stop of the vehicle and arrested Palmer and Parker, both of whom had warrants out for their arrest. (*Id*.) Detective Webb testified that a man matching Petitioner's description was seated in the back seat of the vehicle next to a white plastic bag containing coins and two-dollar bills – items also believed to be property stolen from the robbery.[2]

---

[2] In his § 2254, Petitioner appears to argue that Detective Webb did not actually see the stolen items in plain view because Detective Webb did not write it in the narrative portion of her police report. (ECF No. 5, at 31-45.) However, at the suppression hearing, the trial court found that Detective Webb had indeed seen the stolen property in plain view based upon her testimony. (ECF No. 4-2, at 45-48.) The Appellate Division affirmed this finding. *See Kenion*, 2009 WL 2015772, at *14. Under, 28 U.S.C. § 2254(e)(1), the state court's findings are entitled to deference and presumed to be correct unless a petitioner rebuts that assumption with clear and convincing evidence. Here, Petitioner has not provided any such clear and convincing evidence and has failed to meet his burden to overcome the presumption of correctness.

(*Id*. at 28-29.)  Detective Webb asked Petitioner to step out of the vehicle.  (*Id*. at 29.)  When Detective Webb asked Petitioner if he name was Keith, he responded yes, he was Keith Kenion and he was from North Carolina.  (*Id*.)  A pat-down was conducted of Petitioner, which resulted in the discovery of additional two-dollar bills believed to have been stolen, and Petitioner was subsequently arrested.  (*Id*.)  Given all of this information, this Court agrees with the state courts' determination that police officers had sufficient probable cause to arrest Petitioner.  *See Devenpeck,* 543 U.S. at 152.  Accordingly, as the Appellate Division found, Petitioner's motion was without merit and Petitioner is unable to show that it would have been meritorious if brought by defense counsel instead.  The state courts' adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  Thus, Petitioner is not entitled to relief on this claim.

### B. Complaint Warrant

In Petitioner's second ground for relief, he argues trial counsel provided ineffective assistance when he failed to challenge the validity of Petitioner's complaint warrant.  (ECF No. 1, at 7.)  Specifically, Petitioner asserts that the complaint warrant issued for him was invalid because his copy did not contain an authorization signature.  (ECF No. 5, at 27-30.)  Petitioner argues that if trial counsel had litigated a motion challenging the warrant, that the motion would have been successful and all evidence stemming from Petitioner's arrest would have been suppressed.  (*Id*. at 29-30.)

Prior to trial, Petitioner filed a *pro se* motion to dismiss the complaint, arguing that the complaint warrant was defective because it was "not made upon oath before a person empowered by law to take complaints," as is required by New Jersey Court Rule 3:2-3.  (ECF No. 5-1, at 45; ECF No. 4-22, at 31-33.)  The trial court denied this claim, finding that the warrant was valid.

(ECF No. 4-22 at 32.) In a hearing addressing both Petitioner and his co-defendant's pro se motions, the trial court stated, "I don't find anything that requires the [Administrator's] signature on the copies. It's required to be on the original." (ECF No.4-1, at 28.) The originals in this case had been signed. (*Id*.; ECF No. 5-1, at 56.) On direct appeal, the Appellate Division denied Petitioner's claim, commenting that the claim was "without sufficient merit to warrant discussion in a written opinion." *See Kenion*, 2009 WL 2015772, at *14. During his PCR proceedings, Petitioner asserted trial counsel had been ineffective for not challenging the validity of the complaint warrant. (ECF No. 5-1, at 78.) The Appellate Division both rejected this claim, summarily holding that Petitioner's argument failed to meet either *Strickland* prong and the contention lacked sufficient merit to warrant further discussion. *See Kenion*, 2017 WL 5664395, at *6.

Here, Petitioner has failed to demonstrate that he suffered prejudice as a result of trial counsel's failure to challenge the validity of the complaint warrant. Petitioner filed his own *pro se* motion challenging the validity of the warrant which was heard and denied by the trial court and the Appellate Division. Petitioner has not demonstrated, or even alleged, how trial counsel's filing of the motion would have resulted in a different outcome. Petitioner alleges simply that, "if trial counsel … had applied argumentation [sic] the (motion) would have been granted." (ECF No. 5, at 29.) Accordingly, this Court does not find that the state courts' adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to relief on this claim.

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability shall not issue.

## VII. CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED, and a certificate of appealability shall not issue.


DATED: _September 30, 2019_                    _s/Robert B. Kugler_
                                                ROBERT B. KUGLER
                                                United States District Judge